Good morning. Good morning. May it please the Court, I'm Michael Raphael on behalf of the United States. With the Court's permission, I'd like to reserve a minute for rebuttal. Sure. Thank you, Your Honor. In this case, the defendant absconded while he was on supervised release. He used an alias and he was not found for several years. Under this Court's opinion from last August in Murgillo-Oliveras, the supervised release period is told at least from the beginning of when the government issued a warrant for the defendant's arrest for absconding. So are you saying that we have the statute that says there has to be a sworn warrant, and we discussed that in Vargas, Amaya, that we judicially created another document, another doctrine that allows tolling in the case of a fugitive? Yes, and there was a dispute over that, but that battle was settled by Murgillo-Oliveras last August. Now, Murgillo relied on Crane, a decision from this Court, long before that and long before 3583I. So this Court's law on that existed for quite a long time. But if there was any question over whether tolling existed at all, that was settled by Murgillo last August. So that shouldn't be a question in this case, and that's why the district court's opinion here, which came out slightly before Murgillo, is wrong on its own terms. The district court reached a conscientious decision, but it just came out differently than this Court came out in Murgillo. So that much must be settled. What's remaining, though, in this case would be how long does that tolling last. And here the government's position is that tolling lasts until the defendant is found, until he's discovered and identified. And that, if this Court follows that position, that's all this Court needs to decide here. The tolling lasted from the time that the warrant in February 1998 was issued until the time that he was brought in. And it's during that time, during that whole time, that the defendant was not in fact subject to the terms and conditions of his supervised release. I analogize this to the defendant having to serve a prison term and the defendant escaping from that prison term. Once he is apprehended and brought back in, he has to finish out that prison term. And I think that that same logic makes sense for supervised release when a defendant is subject to a term of years of supervised release. If he absconds in the middle of it, there's tolling under Murgillo, as there must be, and that tolling continues until he's brought back in. It starts from the date of becoming or entering fugitive status. The government contends it starts, the tolling is triggered. Yes. And I think the ---- How do you know that date? I think the Murgillo logic makes sense, that that date is the date the government, that the probation office issued the warrant here in February 1998. Because that's the time when we know the probation office is saying, we are no longer supervising this defendant. We are looking for him. It's from that point that we know the defendant is not subject in fact to the terms and conditions of supervised release. That's the operative language used in Murgillo and in other cases. We know from that point on. Up until that point where the warrant is issued, it's true a couple months before then, the defendant appears to have absconded. But we don't know until the warrant whether the probation office is treating this as he is gone, he's an absconder. We're no longer supervising him. So the date of the warrant makes sense. What doesn't make sense and what's causing some of the problem here and in other cases we have is that Murgillo uses language that would indicate that the tolling runs, that Murgillo uses the term at least, at least until the time that supervised release would otherwise have expired. And that's the problem here. Our position is there's no reason for tolling to end at the time that supervised release would otherwise have expired. That bears no relation to the reason for tolling, which is that the defendant has absconded and is off supervised release. The ending date would be when he's recaptured? Is that the? Yes. Most technically I would say when he's recaptured, discovered and identified. So when they recapture him and they realize he is De La Mora, in this case he is the defendant. In this case he was using an alias and when he was first brought in, he was thought to be the person who he had attained the false identification for. So there was no reason at that first instant for the government to know they hadn't identified him as the defendant. So let me make sure I've got your argument in mind. This guy was on supervised release when he absconded. Yes. At that point the clock stops and it stays stopped until he is identified and captured and then the clock starts running again. Yes. And then you have to figure out how much time he has left on supervised release and as long as they file the petition to revoke within that period of time, you're in business. Yes. Or if they have the actual hearing without filing the petition. Either a sworn petition or the actual revocation has to get in. Once the clock starts to run again and if they don't file it by the time he expires, then you're cooked. Absolutely. Gotcha. And there's no question on this, on the details of this, once the court gets to the point in this case where the court concludes that tolling runs all the way until the time that he's found, brought in, discovered and identified, because things happen pretty quickly after that. Both a sworn petition in support of a warrant was filed right away and in any event, the hearing took place, you know, reasonably promptly. I mean, of course, he hasn't been revoked yet because the court found no jurisdiction, but the sworn petition was filed in March of 2005 right after he was identified. So there wouldn't be any question at that point. So you're holding him on other charges right now or? Those charges have been dismissed. I've checked that recently. And so there is no, my understanding is that there is no separate criminal case pending against him. There are, as I understand it, deportation proceedings, removal proceedings pending against him, but there's not a criminal case. He is apparently in the country but faces no other criminal charges. So he's in INS or whatever it is, ICE custody. He's not in criminal custody? He may not be in custody. Defense counsel may be able to answer that. He is subject to removal proceedings that have dates scheduled on the immigration calendar, and I don't believe he's in custody, but defense counsel I'm sure can answer that. So if the court, defense counsel did point out that this is a unique situation based on the window period of time the defendant was originally convicted, no one had considered those issues before this appeal, but those issues need not be addressed if the court follows this logic that tolling occurs the entire way from the time that defendant is, the entire time defendant is an absconder until he's brought back in. And our view is there's no reason to cut off tolling any earlier than that. It just doesn't, and it doesn't make sense for the criminal system to allow a defendant to be able to wait out his period of, you know, to hide out for a certain period of time, and for that time to be enough, then, to walk off scot-free, particularly where that time period would be different for different defendants. Some may have a week left in their period of supervision when they abscond. Some may have four years left. That period bears no relation to the reason for tolling itself. If there are no more questions, I'll sit down. Roberts. Thank you very much, Mr. Garfield. Good morning, Your Honors. I'm going to start with Stavina Chen for Jose de la Mora, who is present in the courtroom. He is not in ICE custody. He's present here. He is pending proceedings, but he has several affirmative defenses. Your Honors, there are a number of reasons why tolling should stop at the time that the supervised release would otherwise terminate, which is what Morgia Olivares held. There are at least three reasons. The first reason is that Morgia Olivares relied on Crane, and Crane was a decision that was decided before 3583I came into effect. In effect, Crane was trying to create a 3583I. It looked to the language of 3565C and said, wow, there's not that type of language in 3583. We need to create it. And so in Morgia, they talk about supervised release, the tolling, until the term would otherwise expire. Why do they say that? Because when supervised release expires, 3583I comes into effect, and all the requirements that are attendant to that, Vargas Amaya. In other words, at the time the supervised release would otherwise have tolled, either a hearing had to have been heard, had to have been had, excuse me, or a warrant, a sworn warrant would have to issue. So that's the first reason why tolling should stop when supervised release otherwise would expire. The second reason is Morgia Olivares creates this rule that if you stop reporting, that makes you a fugitive. Now, that is different from any other definition of fugitive in the criminal law. The fugitive disentitlement doctrine or the rule that statute of limitations shall not extend to fugitives, in all those cases, the government bears the burden of showing that the person is a fugitive. And that makes sense. It doesn't make sense to make the government bear the burden in the supervised release context because the person is under an obligation to report. So while they're under that obligation to report, the government doesn't bear that burden. You're saying Morgia was wrong? Is that your? No, Morgia, it was right. Morgia Olivares says that supervised release should toll from the time the warrant, the unsworn warrant, should issue at least until the time that supervised release would otherwise have expired. That's what Morgia Olivares says. And I agree with that because when supervised release would otherwise expire, the defendant is no longer under an obligation to report. But doesn't that reward him, like Morgia said, reward him for absconding in the first place? It doesn't reward him for absconding in the first place because if you look at the cases that interpret 3583i, and those are the cases which say a sworn warrant needs to issue before supervised release would otherwise expire, the government is under the burden to make reasonable efforts to actually execute the warrant. So what would happen, what we're all we're asking here is that a sworn warrant issue before supervised release would otherwise have expired. In this case, we're not saying the sworn warrant had to issue the year supervised release would expire. We're saying they get nine more months because that's the time period where my client was not allegedly reporting. They get nine more months. But after that nine months, either a sworn warrant has to issue or the hearing has to occur. Otherwise, we're saying that a unsworn warrant, the one that issued in this case, has more power than a sworn warrant. Because in all the cases that involve the lawyer. Why can't we just say it doesn't even matter, warrant or no warrant? Once he's on the lam, the clock stops. What is the, what difference does it make whether there's a warrant, sworn or otherwise? Because then we need to have some sort of an investigation as to when he's on the lam. The government is correct. There have been two criminal cases that have both been filed and dismissed. The second one was dismissed after defense counsel filed a discovery motion related to the statute of limitations. It is the government's contention that Mr. De La Mora was on the lam this entire time. The defense has a lot of other facts which have never been litigated. They were about to be litigated in the 1326 case when the government chose to dismiss the 1326 for a second time. So the idea that Mr. De La Mora is on the lam is a government allegation. What we do know is that he did not report. That's an allegation also. But that's quite clear from the defense. Right. And, I mean, if it turns out at the hearing it doesn't, it turns out not to be true, then you win. I don't think that, well, if, excuse me. You're saying that's their allegation. I understand that's their allegation. If it turns out their allegation's not substantiated, they lose. That's true, Your Honor. But I don't think we need to reach that because this is a case in which a sworn warrant didn't issue until many, many years later. So it didn't issue within the terms of the supervised release plus tolling. It issued after supervised release plus tolling and five more years after that. And to hold that that is good enough is to say that the unsworn warrant that issued has more power than a sworn warrant because in Garrett and Hill and all the cases that those cases rely on, this Court and other courts have held that just issuing a warrant isn't enough. The government has to make reasonable efforts to execute that warrant. Now, there's all these other facts that aren't in the record which indicate that the government made no efforts to execute the warrant at all. That's not before this Court. But what I'm saying is that the warrant didn't issue at all, so we don't even need to reach the issue of whether reasonable efforts were made. And we're kind of putting the cart before the horse because I absolutely disagree with the government that this is the only issue this Court needs to resolve. This Court first needs to resolve whether the district court ever had authority to revoke the supervised release at all. At the time that Mr. De La Mora was committed the offense, the Anti-Drug Abuse Act was in place, and it provided for imposing supervised release. But it had absolutely no provisions for revoking supervised release. The only way we get a revocation in this case at all is to apply law that came into effect after Mr. De La Mora's offense was committed. And there's, I think, really no ---- Kagan. Doesn't Mergia answer that when it says that, well, I'm not sure which case exactly says this, but they say we have to assume that Congress had the other law in mind when it enacted the requirement of this warrant. Gosling-Perez does say that. It does say you have the other law in mind, but that is all in the context of imposing supervised release and not revoking it. In fact, Gosling-Perez says we have to believe ---- it's plausible that Congress thought by the time someone was on supervised release, these other statutes would be in place, and so they would apply. Well, the Supreme Court in Johnson in 2000 said basically the exact same thing about what Congress must have believed about 3583H. They said Congress must have believed that 3583H would apply as it was enacted, but we hold otherwise. We hold that a statute comes into effect and applies when it's enacted or when Congress says it's going to come into effect. Excuse me. Congress, in the supervised release context of the Sentencing Reform Act, specifically said that those revocation provisions would come into effect on November 1, 1987, and that is after the offense that occurred in this case. So to say that we can somehow interpret and bring all of the Sentencing Reform Act to construe what Congress passed in the Anti-Drug Abuse Act of 1986 is to fly directly in the face of Johnson, which specifically holds otherwise. Johnson says even if Congress believed that this statute that was later enacted would apply, that's not good enough unless they tell us so. And in this particular case, Congress not only told the courts and everyone that the revocation provisions would not apply until 1987, but in 1987 they again amended the statute so that it shall only apply prospectively to offenses that occurred after the effective date. So this isn't even a case where we have to go to the rule of lenity or other background rules. This is a case where Congress told us when the revocation provisions would apply. They would apply starting 1987. And so I think that the government is wrong when they say we don't need to reach this issue. This is the first issue the Court needs to reach. It's an odd thing. It's an odd thing that Congress would pass a law that says you can impose supervised release, but you can't revoke it. But from reading Goslon Peretz and sort of following the whole history of the migration from special parole to supervised release, it's quite clear that Congress was confused, and they made quite a few mistakes. And it probably was a mistake for them to pass a law that says you may impose supervised release without providing a single mechanism for revoking it. But it's not a mistake that this Court can fix now. And even if we thought we could, let's say we thought, okay, we're going to look to the Sentencing Reform Act for the provisions for how to revoke supervised release, even though they weren't effective yet. On that date, in 1986, when this offense occurred, the Sentencing Reform Act did not provide for this entire mechanism for revoking supervised release. It only said violations of supervised release may be dealt with pursuant to the contempt provisions, 18 U.S.C. 401. So even if we believe you could look to the Sentencing Reform Act, what the Sentencing Reform Act says, it's only as an act of contempt. So I think I'm out of time. Roberts. Thank you very much, Ms. Chen. I feel you get the last word here. Thank you, Your Honor. First of all, defense counsel is right that logically this Court has to look first at whether supervised release could be revoked at all. The reason why I didn't address that is this Court has already settled that issue in Rodriguera, a case cited in our brief, in which this Court held that a defendant who was convicted during the so-called window period must be informed at his Rule 11 plea colloquy that his supervised release can be revoked. Because, this Court held, his supervised release can be revoked. And this Court followed the Supreme Court's decision in Gaslan-Perez, which comes very close to saying the same thing when it says that such a defendant can be put on supervised release in the same manner as other defendants. So this issue is settled. There's no way to hold here that his supervised release can't be revoked after Rodriguera. And as defense counsel seems to acknowledge, it would be an odd situation for a defendant to be able to be on supervised release, which is what the Supreme Court said in Gaslan-Perez, but not be able to be revoked. And it's settled by Rodriguera. On the other issues about tolling, first of all, in general, most of defense counsel's arguments go to undermine the Murguia holding itself, an issue that's already settled and not to say that tolling should stop at a certain point once it's begun. Whether the — for the tolling purpose, whether the warrant is sworn or not doesn't matter because it's simply a tool by which the Court is determining when the tolling starts for purposes of absconding. To my mind, it would be the same if the probation office had simply issued a declaration saying this defendant is gone, we're not supervising him right now. And that's the tool that the Court is using in Murguia to determine when does tolling start. It doesn't matter for this purpose whether it's sworn or not because we're not relying on 3583I. Murguia wasn't relying on 3583I. Murguia is just simply using it as a tool to determine when the tolling starts. I see your time is up. Thank you very much. Ms. Chen, thank you very much as well. The case just argued is submitted.
judges: Lay , Silverman, Wardlaw.